Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ELLA BLOOMFIELD, Respondent, for Compensation under the Workmen's Compensation Law, v. S. NOVEMBER, Employer, and ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LIMITED, Insurance Carrier, Appellants.

Third Department, November 28, 1917.

Workmen's Compensation Law — failure of claimant to give written notice of injury within ten days after disability — failure to establish that employer and insurance carrier had not been prejudiced thereby.

In order to excuse a claimant for not giving the notice required by section 18 of the Workmen's Compensation Law, it should be made to appear that the disability of the claimant and its cause were called to the attention of the employer or the insurance carrier or the Commission in such a manner that the inference could be fairly drawn that the presumption of prejudice to the rights of the insurance carrier was overcome. This ought not to rest upon mere specious reasoning; it should have a substantial basis of fact.

Where the evidence establishes that the claimant told her employer while he was busy that she had pricked her finger with a pin and asked for an antiseptic; that she continued to work for three days thereafter, when she became disabled from blood poisoning, and that the first notice in writing of the alleged disability was given more than nine months after the alleged injury, the claim should be dismissed for failure to give notice in compliance with section 18 of the statute, or to establish that the insurance carrier or employer was not prejudiced thereby.

LYON, J., and KELLOGG, P. J., dissented, with opinion.

APPEAL by the defendants, S. November and another, from awards and orders of the State Industrial Commission, entered in the New York city office of said Commission on the 28th day of May, 1915, and on the 2d day of August, 1915, respectively.

*Alfred W. Andrews* [*John N. Carlisle* of counsel], for the appellants.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* counsel to State Industrial Commission, for the respondents.

WOODWARD, J.:

The claimant alleges that on the 5th day of August, 1914, while employed by one S. November, she scratched the third finger of her right hand with a pin; that she continued to work until the eighth day of August, when she quit work. It is claimed that this pin scratch or puncture resulted in blood poisoning, and an award for twenty-five weeks, at $11.54 per week, was made on the 28th day of May, 1915. Subsequently, and on the 2d day of August, 1915, a second hearing was held, where Dr. Werner testified that the infection from the wound in the third finger of the right hand had extended to the left wrist, and for this further injury the State Industrial Commission made a further award of twenty-seven weeks, amounting to $311.58. Appeals were taken to this court from these awards, and they were affirmed. (172 App. Div. 917.) The Court of Appeals reversed this court and sent the case back to the State Industrial Commission, upon the ground that the claimant had failed to serve the written notice required by the statute (Workmen's Compen-

sation Law, § 18), and that the State Industrial Commission had not properly excused the failure on the part of the claimant to give this notice. (219 N. Y. 374.)

The State Industrial Commission has made a finding of fact that " Ella Bloomfield failed to give to her employer written notice of injury within ten days of disability. Such failure has not prejudiced the employer for the reason that the employer was personally notified at the time of the accident that she had pricked her finger and that she required some peroxide for application to the injury and he then had an opportunity to avail himself of all the facts and to give such attention as the occasion might require to the matter, and failed to do so because he was busy and did not consider the matter of any moment. When Ella Bloomfield did not return to work on August 10th, the employer sent to her home her uncollected wages and the employer's representative was then shown by Ella Bloomfield the swollen condition of her hand and was told the cause thereof and as being the reason why she failed to report for work. The insurance carrier was not prejudiced on the part of Ella Bloomfield for the reason that the knowledge of the employer above mentioned constituted knowledge on the part of the insurance carrier by force of the contract of insurance involved herein between S. November, employer, and Zurich General Accident and Liability Insurance Company, Limited, insurance carrier." Upon this finding of fact the State Industrial Commission decides that the " failure of Ella Bloomfield to give to her employer within ten days of disability a written notice of her injury is hereby excused on the ground that neither the employer nor the insurance carrier was prejudiced by such failure."

Does this meet the objection pointed out by the Court of Appeals? That court, in its opinion, says: " The Legislature, however, has deemed it proper and essential, under ordinary circumstances, that a written notice of disability and claim should be promptly served so as to give an employer the opportunity to investigate the circumstances of the claim. This requirement ought not to be treated as a mere formality or be dispensed with as a matter of course whenever there has been a failure to serve such notice. The Legislature has enumerated reasonable conditions under which failure to serve

the notice may be excused and we think that the attention of the Commission should be fastened upon the question whether upon the proofs in a given case the circumstances do exist which are sufficient to justify such failure, and that if they do exist that fact should be properly stated as one of the facts which constitute the basis of the award." (*Matter of Bloomfield* v. *November*, 219 N. Y. 374, 376.)

Section 18 of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41) provides that in case of an injury notice " shall be given to the Commission and to the employer within *ten days after disability*," either by the person or by some one in his behalf, and that the " notice shall be in writing, and contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury, and be signed by him or by a person on his behalf." The importance which the Legislature placed upon this notice is evidenced by the provisions that the notice " shall be given to the Commission by sending it by mail, by registered letter, addressed to the Commission at its office," and not by ordinary mail, with a like provision in reference to the employer, unless the notice is delivered to [him personally. The section then proceeds, that " the failure to give *such notice*, unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State fund, insurance company, or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this chapter."

Neither the evidence nor the findings of the Commission make any pretense that there was any good reason why the claimant could not have given the written notice provided by the statute " within ten days after disability," so that the only inquiry is whether there is any evidence to sustain the finding that the insurance carrier or employer was not prejudiced by this failure to give the written notice. It appears from the testimony that the alleged accident occurred on the 5th day of August, 1914, and that upon this day the claimant told her employer that she had been pricked by a pin, and that she wanted some peroxide, and that the employer, being busy, paid no heed to the matter. This is

the only time that there is any pretense that the claimant told the employer anything in reference to this alleged injury, and at. that time it is not claimed there was any disability; the uncontradicted evidence is that the claimant continued to work until the eighth day of August. The statute requires that the notice shall be given within ten days after disability, not three days before disability, and that this notice shall be in writing, and contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury. Can it be that anything less definite and certain than the notice required by the statute can be accepted as just as good? Does not the fair and reasonable construction of this act require that the insurance carrier and employer shall have at least a substantial compliance with the provisions of section 18; a notice which shall be the fair equivalent of the notice required by the act? Is an employer bound to take notice of every trifling injury, such as a pin prick, because some hysterical woman calls for an antiseptic? Is he bound to anticipate that three days or a week later, or at any subsequent time, this trifling, every-day accident, may eventuate in blood poisoning? The statute, by making definite requirement of a written notice, and specifying its contents and the mode of service, furnishing its own method of proof to a large extent, presumes that the insurance carrier or employer would be prejudiced by a lack of such a notice — by a lack of an opportunity to investigate the circumstances of the accident while the matter was fresh in the minds of all persons — and to say that the employer, in the present instance, had a fair equivalent of this written notice, by this claimant telling him, while he was busy, that she had pricked her finger with a pin, and asking for an antiseptic, is certainly reaching out a long way for an equivalent. It is not claimed that the claimant was at that time disabled, or that she had received any injury which in the ordinary experiences of mankind was likely to result in disability; there is no pretense that the claimant intimated in any manner that she expected to be laid up from this trifling wound, and it is not claimed that this alleged injury was brought to the attention of the employer, the Commission or the insurance carrier at any time after the disability is

alleged to have arisen until more than nine months afterward, except that the Commission suggests that the messenger who carried the claimant's salary to her after she had failed to return to her work was shown the swelling on her hand and told of the cause. There is no claim that she attempted to send word to the employer, or that the messenger ever in fact communicated this alleged information to the employer. The net result is that the only information which was ever shown to have been communicated to the employer was the statement of the claimant that some days before any disability had occurred she told her employer that she had pricked her hand with a pin, and that she asked for peroxide to put upon it. There is little safety in doing business if every trivial pin puncture puts the employer on notice and compels him to follow up each employee to learn whether the puncture has resulted in infection. It opens the way to fraud, and endangers the success of this innovation upon the common-law rule of liability.

In the light of the discussion of the Court of Appeals, it seems to us that in order to excuse a claimant for not giving the notice required by the statute it should be made to appear that the disability of the claimant, and its cause, were called to the attention of the employer or the insurance carrier, or to the Commission, in such a manner that the inference could be fairly drawn that the presumption of prejudice to the rights of the insurance carrier was overcome. This ought not to rest upon mere specious reasoning; it should have a substantial basis of fact. There is not the slightest evidence in this case that the employer, the insurance carrier or the Commission ever had any notice of the alleged disability until the filing of the " employee's first notice of injury " on the 15th day of May, 1915, more than nine months after the alleged injury. This notice was filed in writing upon the regular blanks, but it was filed long after the accident; long after the total disability, which she fixes at August 8, 1914; long after the partial disability, which she places at the 1st day of November, 1914. There being no evidence of any notice of disability brought home to any of the persons or officers within a period of ten days from such disability, and the first notice of injury being filed in writing in May, 1915, it would seem to follow that there is no founda-

tion of fact on which the State Industrial Commission could rest its finding that the insurance carrier and employer were not prejudiced; and the award may not properly be sustained.

The awards should be reversed and the claims dismissed.

All concurred, except LYON, J., who dissented in part in opinion in which KELLOGG, P. J., concurred.

LYON, J. (dissenting):

The holding of the State Industrial Commission, that the employer and insurance carrier have not been prejudiced by the failure of the claimant to give to the Commission- and to the employer the required notice in writing of injury within ten days after disability, as well as the act of the Commission in excusing such failure, were fully justified. Evidence was taken at the hearings had before the Commission pursuant to the direction of the Court of Appeals (219 N. Y. 374) in remitting the claim to the Commission to pass upon these subjects of prejudice and excuse, to the following effect: The claimant's occupation was that of a model in the cloak and suit manufactory of the appellant employer in the city of New York. On the 5th day of August, 1914, while trying on a garment, not finished, but bound with pins and needles, a pin was forced into the third finger of the claimant's right hand. She immediately notified her employer's son who was connected with the business, and who is spoken of as the boss, of the accident, showing him her finger, and asked for peroxide. He told her not to bother him, that he was too busy, but that the peroxide was in the closet. She at once went and got it and applied it to the wound. Considering the injury to be slight, she continued at work until the afternoon of the third day following, when her finger and hand having become badly swollen and very painful, to quote her statements, " I went over [to the son], I says ' I have to go home. I am very sick.' They were very busy at the time you know, so he says to me ' You can't go home.' I says ' I am very sick, I have got to go home. I can't stand the pain.' I went home." One of the claimant's associates testified that on this occasion the claimant's hand was so swollen and sore that she could not use it and that she asked the witness to put her hair up, and to

help her on with her coat, which the witness did.  Two days later the employer sent the balance of the claimant's wages to her home by his shipping clerk, who found her in bed. She then showed him her hand, which was badly swollen, and told him she had stuck her finger while trying on a garment, and had put peroxide on it, and did not know it would be so serious, and that her finger had become blood poisoned.  It is very probable that the shipping clerk upon his return to the factory informed his employer of the claimant's condition, and what she said to him regarding her injury. From the time of returning home, August 8, until November 1, 1914, she underwent constant treatment both at her house and at St. Mark's or St. Luke's Hospital by a surgeon who made incisions and inserted drainage tubes in her finger and in her left wrist, the whole of which had become infected. November 1, 1914, her wounds became healed, leaving the second joint of her finger completely ankylosed, or as she expressed it dead to her, both the tendon and joint being involved, and leaving her wrist so weak and painful that she was unable to work until practically after the expiration of fifty-two weeks from the date of the accident.  In speaking to the surgeon about her injury she for the first learned of her right to compensation, whereupon she went to the office of the Commission and being told that such was the fact she obtained the usual blanks, which she at once filled out and filed with the Commission.  That the employer knew of the injury at the time it took place, or at least of the disability at the time it occurred three days later, is well established by the evidence.  The employer testified before the Commission as follows:  " Q.  Did you know anything about a certain injury which Mrs. Bloomfield sustained on or about August 5, 1914?  'I know she went home sick, I don't know exactly what the reason was.'  Q.  Did she ask if she could go home?  'She did not ask me.'  Q.  When was the first time you knew?  'I discovered it the same day.'  Q.  How did you discover it?  'I had four girls working then, and I could easily see if one was missing.'  Q.  Did you inquire as to why she wasn't there?  'Yes, I was told she went home sick.'  Q.  Did you see her subsequent to that date?  'No.' Q.  Did she return the following day to work?  'No, sir,

she didn't return at all. I sent her the money to her home as the season was over any way.' * * * Q. When did you next see Mrs. Bloomfield? 'I guess I saw her a couple of months later.' Q. Where? 'In my place of business.' Q. What did she say to you? 'She said she was very sick, that she had a lot of trouble with her arm.' Did she say anything about an injury to her finger? 'Yes.' Q. What did she say? 'She said she was very sick and that they operated on her finger.' Q. Did she say what caused it? 'I don't remember that.' Q. Did she say she was injured while working for you? 'I don't remember her saying that.' * * * Q. Did she ever file a notice of injury with you? 'No, but I knew she was home sick.' * * * Commissioner Mitchell: Do you remember anything about accident occurring to her? Witness. I was told that she — After she stayed away, I ask where she is and I was told she was sick home. I don't remember. I am a busy man." Following the filing of the report of injury by the claimant, an investigator of the Commission in the company of the claimant called upon the employer. The investigator testified: " Q. Tell us what the conversation was. Give it as exactly as you can, your own words and the employer's words. A. I asked Mr. November whether Mrs. Bloomfield was employed by him and he told me that she was. I next asked whether she met with any accident. He informed me the accident was so slight he didn't think it was necessary to report to the Commission * * *." It is a matter of very serious doubt whether a notice in writing of the injury, given ten days after disability, stating the time, place, nature and cause of the injury would have added anything to the information which the employer already had. The statute presumes that sufficient notice was given. (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], § 21.) Notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the insurance carrier. (Id. § 54, subd. 2.) The surgeon testified that he made the claimant forty visits at either her home or the hospital between August eighth and November first. There is not to be found in the record, or in the brief of the appellants, a suggestion that the claimant did not have the best attention and most scientific

medical and surgical treatment which could have been given her, or that anything could have been done which would have brought about a more prompt or complete recovery. In view of all the facts above stated the finding and decision of the Commission that the employer and insurance carrier were not prejudiced by the failure of the claimant to give the written notice was fully warranted. It quite naturally follows for the same reasons that the Commission was justified in excusing such failure. The claimant testified that she was entirely ignorant of her rights under the Workmen's Compensation Law until immediately previous to her filing the report of injury While ignorance of the law is in general no excuse for its violation, I think such lack of information is a proper subject for our consideration in view of the fact that the Workmen's Compensation Law had been in effect less than six months at the time the claimant suffered the accidental injury. The evidence is that the claimant suffered intensely, more than one month and a half being required to complete the drainage from the infected finger. Her statement is that after leaving her employer's place of business she was too ill to inform her employer or any other person of the accident.

The report of the attending surgeon described the nature and extent of the injury as "Infected punctured wound of right ring finger involving second surgical joint and by infection to left wrist (metabolic)." Perhaps the award should have been for a single period of fifty-two weeks, instead of for a period of twenty-five weeks for the loss of the use of the finger, and for an additional period of twenty-seven weeks for disability on account of inability to use the wrist. (*Matter of Marhoffer* v. *Marhoffer*, 220 N. Y. 543.) However, the manner in which the award has been made in no way affects the merits of the claim nor increases the amount of the award. For these reasons the appellants may have seen fit not to raise such objection, which I think under the circumstances should not first be raised by us.

The award should be affirmed, with costs against the appellants.

KELLOGG, P. J., concurred.

Awards reversed and claims dismissed.